STEPHEN PEARL, Sheriff,
*against*
EBENEZER ALLEN.

THE Legislature, at the sessions of the General Assembly, *October*, A. D. 1802, passed the following act:

" An act restoring *Ebenezer Allen* to his law.

" Preamble. Whereas *Stephen Pearl*, of *Burlington*, in the County of *Chittenden*, in the capacity of sheriff of said County, recovered a judgment against the said *Ebenezer Allen*, by the consideration of the Honourable the Supreme Court of Judicature, holden at *Burlington*, within and for the County of *Chittenden*, at their *June* adjourned session, one thousand eight hundred, for the sum of one hundred and twenty-nine dollars and fifty-seven cents, including damages and costs, by reason of which the said

The Court are not held judicially and *ex officio* to notice a private act of the General Assembly. He that would take the benefit of it must attach it to the record.

*Ebenezer* is now imprisoned in the common gaol of *Chittenden* County : Therefore,

" Section first. It is hereby enacted by the General Assembly of the State of *Vermont*, that the action of the said *Stephen* against the said *Ebenezer* be again entered on the docket of said Court, and stand open for a new trial, and that all judgments rendered against any person or persons in consequence of said judgment, be stayed, and no further proceedings thereon had.

" Section second. And it is hereby further enacted, That if the said *Ebenezer Allen* shall eventually recover in said suit against the said *Stephen*, he shall have right to tax his legal costs from the commencement of his said suit, and his legal costs, which have arisen in all suits which have been instituted in consequence of said judgment.

" Section third. And it is hereby further enacted, that on the said *Ebenezer's* procuring bail to the amount of seven hundred dollars, to the acceptance of the sheriff of said *Chittenden* County, that his body shall be forthcoming to be charged in execution, if final judgment be rendered against him in said suit, it shall be the duty of said sheriff to permit the said *Ebenezer* to go at large whither he will ; and no suit shall be maintainable against said sheriff for an escape, nor against the surety of the said *Ebenezer* on the bond heretofore taken for the liberties of the prison, on the execution at the suit of the said *Stephen* by virtue of which he is now imprisoned."

At the *February* term, A. D. 1803, *Ebenezer Allen* procured the clerk to docket the action referred to in the act.

*Keyes*, counsel for the sheriff, moved that it might be struck from the docket, as it appeared to be an entry without mesne process.

*Harrington*, counsel for *Allen*, stated the substance of the act, but confessed that he could not produce it, as by some delay of the press, the annual pamphlets containing the acts of the last session of the General Assembly had not been distributed; but as the Court knew of the passing of the act, he trusted they would suffer the action to remain upon the docket.

*Sed per Curiam.* This act, as it is represented by Mr. *Allen's* counsel, is a private act, and as such the Court are not obliged judicially and *ex officio* to notice it. If advantage would be taken of it, it should be attached to the record. If such act has been passed by the General Assembly, it is no excuse for the person in whose favour it was enacted, that the annual pamphlet containing recent acts, has not been promulgated. He should have obtained a certified copy of it from the office of the Secretary of State.

The clerk is directed to erase the action from the docket.

Action erased from the docket.

And now, at the present term, *Harrington*, counsel for *Allen*, procured the clerk to docket the action again, and filed with the clerk an office copy of the act, certified by the Secretary of the State.

*Hitchcock* moved that the action should be struck from the docket.

Pearl
v.
Allen.

First. Because it is an action without mesne process, and not entered by special leave or order of Court.

*When the Legislature, by a private act, grant a new trial, and make no mention of the term at which the action shall be docketed, it shall be construed to intend the next term after the passing of the act; and an adjourned term, when a stated term intervenes, shall not be considered as the next term.*

Secondly. If the action could be sustained without process by operation of the act, it should have been entered the last term of the Court, and cannot be entered the present term.

Thirdly. Because the act is unconstitutional, and therefore void.

*Hitchcock*, counsel for *Pearl*. The act does not provide for any process, and therefore has left *Allen* subject to the same rules and regulations as to process, as all other suitors are.

There are several modes by which an action may be brought into this Court.

The first and most common is by appeal from such subordinate Court, over whom this Court have appellate jurisdiction.

Secondly. By original process, returnable immediately to this Court. It is true that in certain cases the action may be entered in this Court, and the process issue antecedently; but in such cases the entry is made by special leave or order of the Court, or by some prerogative powers existing in the officers of government. Such are indictments by the Grand Jury, informations by the State Attorney, rules to show cause for contempt, the writ of *habeas corpus*, or *subpœna duces tecum*, &c.

This action does not come into Court in any of these modes, or in any other, if we have omitted any by which an action can be legitimately entered on the docket.

Here have been several trials, final judgment, execution, and consequent commitment; and after all this it is surely as reasonable that our client should have due notice of the revival and entry of the action, and his obligation to appear and prosecute it, as it was that *Allen* should have such notice when the action was originally commenced.

This is a private act, and an individual is not obliged to notice it, any more than the Courts of Justice, unless the knowledge of its existence is specially communicated to him by due process of law.

An attempt was made to thrust this action into Court the last term without even producing the act. But the Court observed that it was a private act, which they were not held officially to notice, unless attached to the record, and accordingly ordered the action to be struck from the docket. Our client had therefore every reason to conclude, from the decision of this Court, or at least from its operation, that the act and the action were put for ever at rest; and when a second attempt is made to force this action under the consideration of the Court, this forms an additional reason why our client ought to have had sufficient and regular notice of the attempt; and this leads us to our second exception.

That if the action can be sustained by the mere operation of the act without antecedent process, it should have been entered at the past term.

The act was passed at the *October* session of the General Assembly, 1802, and the next term subsequent to the sessions was the last *February* term, which it is manifest was the term intended by the Legislature when the action should be entered.

The Legislature, when they granted this privilege to *Allen*, surely did not intend that it should extend to an election in him to enter the action at any future time which he might prefer; for as this very extraordinary act has stayed all proceedings on the judgments, as well against him as against any person or persons in consequence of said judgment, if *Allen* could elect a term at which the action should be entered, he would have every motive of interest to defer the entry to as distant a term as possible, as in the meanwhile the collection of a debt against him would be suspended, whilst it would be very questionable whether *Pearl*, when conusant of the act, could revive the action under it; and if *Allen* can leap over the first term after passing of the act, as to the entry of the action, why may he not a second or a third, and to what term shall he be restricted? We have, however, little occasion to dwell upon these minor defects in this docket entry, as we rest firmly upon our third exception to the entry, which cannot be shaken without shaking the constitution itself, which is, that the act itself is unconstitutional, and therefore void.

The second section of the plan or frame of government in the second chapter of the constitution vests the *supreme legislative power* in a house of representatives of the freemen of the Commonwealth or State of *Vermont.*

The third section vests the *supreme executive power* in a Governor, or, in his absence, a Lieutenant Governor and Council.

The fourth section vests the *judicial power* in the Courts of Justice.

A distinct and separate use of these powers the

framers of our constitution considered absolutely necessary to preserve the blessings of liberty, and keep the government free. Therefore, guarding against their interference in a particular instance by the 5th section, which gave the Legislature power to " erect a Court of Chancery, *provided they do not constitute themselves Judges of said Court*," it is expressly declared in the sixth section, that " the *legislative, executive,* and *judiciary*, shall be *separate* and *distinct*," so that neither exercise the powers properly belonging to the other; and to impress this fundamental principle upon the people, the eighteenth article of the declaration of rights declares, " that frequent recurrence to fundamental principles, and a firm adherence to justice, moderation, temperance, industry and frugality, are absolutely necessary to preserve the blessings of liberty, and keep government free; the people ought therefore to pay particular attention to these points in the choice of officers and representatives, and have a right in *a legal way to exact a due and constant regard to them from their legislators* and magistrates in making and executing such laws as are necessary for the good government of the State."

We consider the act under consideration to be unconstitutional, and therefore void, in that the provisions of it are gross interferences by the legislative with the judicial power.

The granting a trial *de novo* is properly and essentially a judicial act, and cannot be done by the Legislature; for the act of granting a new trial necessarily implies a retrospective consideration of a cause already tried, and the question whether grantable or not, often involves questions of practice in the Court,

Pearl
v.
Allen.

and not unfrequently goes to the merits of the cause, as in cases where the motion is grounded on material evidence, recently discovered; in all such cases no just distinction can be made between the power which tried the cause originally, and the power which may grant a new trial. Both are judicial, and neither legislative. If a subject is injured by another, he does not apply to the Legislature for redress, but to the Courts of Law, for the Constitution has so directed him, and he learns from it, that during the trial at least the Legislature shall not interfere. It is acknowledged by all, that during the trial they cannot interpose; if they should attempt it, the very attempt would excite a general alarm; but the Legislature consider, it seems, that they may interfere after final judgment, execution and commitment. What is the spirit of this act? Does it not in effect say to this Court, " We the Legislature, consider, that you the Judges of the Supreme Court of Judicature, have not done justice to *Allen*, one of your suitors; therefore we command you to try his cause over again." Imagine that this Court should obey this unconstitutional mandate, and *Allen* should again be unsuccessful, cannot he apply again to the Legislature, and cannot they again command? and every time they grant a new trial, even through respect to them, must it not be necessarily implied, that they revise the judicial proceedings of this Court. Where, then, is the benefit to the suitor in that the Legislature cannot interfere whilst his cause is on trial, but may at pleasure interpose after the suit is judicially terminated?

But if the Legislature formerly assumed this power, for it is manifest they never held it constitutionally, it is certain they did not possess it at the

passing of this act; for they have themselves placed the power on its constitutional ground by the act of *March* 2, 1797, which enacts, "that the Supreme Court of Judicature, and the several County Courts within this State shall have power to grant new trials in all cases within their respective jurisdictions, according to the usages of law, at the same session in which judgment was rendered in said cause, or by *petition* to any subsequent session of the same Court in which the original judgment was rendered."

Pearl
v.
Allen.

*Vermont* Stat. vol. 1. p. 96, 97.

Before the passing of this act, the judicial Courts possessed and exercised the power of granting new trials on *motion*, but not on *petition ;* and as such *motions,* by the practice of the Courts, could not in their nature be filed after final judgment, execution issued, and adjournment of the Court, cases arose where, by the discovery of new and material evidence, and other causes, new trials ought reasonably to be had ; and the Court having no power to grant new trials in such cases, the Legislature assumed the power, and were suffered to exercise it *ex necessitate rei ;* but the act cited acknowledging the power *to grant new trials in* ALL CASES to be in the judicial Courts, the Legislature can on no pretence continue to exercise it.

But the object of this act is not merely to grant a new trial to *Ebenezer Allen,* but further to interfere with the judicial powers by directing the taxing of costs, not only in the suit on which the new trial is granted, but *his costs which have arisen in all suits which have been instituted in consequence of said judgment."* Moreover, the act not only suspends the judgment in the suit on which the new trial is granted, but stays, if not absolves, all judgments rendered

against any person or persons in consequence of said judgment.

Certainly there never was a stronger case, or which called more imperiously for the interference of this Court to withstand the encroachments of the legislative power than the present; for the absurdity of the act granting a new trial to *Allen* can only be surpassed by its unconstitutionality.

Whenever the Legislature exceed their constitutional powers, it is for the judicial Courts to restrain them. We are sensible that less danger is apprehended by the people from the assumption of unconstitutional power by this popular branch of the government, than from either the executive or judicial; but the people are too often blind to their own political interests, and need often to be saved by salutary checks upon their favourites, even when they are most confident, and consider themselves most secure.

We have in this act an instance of legislative interference with the judicial in granting a new trial after final judgment, execution, and consequent commitment; of releasing a prisoner from gaol, committed in pursuance of a judgment of this Court; of directing the taxation of costs; and, finally, with the two-edged sword of legislation, destroying the judgment debts of others not immediately concerned in the suit on which the new trial is granted.

If the legislative can so far interfere with the judicial powers as in this act, where shall bounds be set to their violations of the constitution? For our own part, as citizens of the government, we confess ourselves alarmed for our constitutional rights, and have reason to apprehend, that if a check is not put by this

Court to this extension of legislative power, that we shall shortly meet an act of the General Assembly, directing what shall be the opinion of this Court in point of law, or what shall be the verdict of the Jury in matter of fact.

*Daniel Chipman*, counsel for *Allen*. The *first* exception to the entry must be determined by the opinion of the Court on the *third;* for if the act be constitutional, the legislative power in directing it to be entered without process, cannot be denied. In the present case there seems less occasion for mesne process, as that had already been commenced in the original institution of the suit; and all which is necessary to be effected is for the Court to take up the cause with all its proceedings, excepting the final verdict and judgment, which are suspended by the act, and to proceed in it as in any other case where a trial *de novo* is granted. The act contemplates this when it provides, " that the action shall stand open for a new trial," and that *Allen*, in case he should recover, should not merely have his costs on the new trial, but " should have a right to tax his costs from the commencement of said suit."

The mere exhibition of the act to *Pearl* supplies the place of any process to bring him into Court; for the objection prevalent at the last term, that the act is of a private nature, is now done away by its being filed in Court, and *Pearl's* appearance must estop him from pleading ignorance of its existence.

Upon the second exception we observe, that as the act has pointed out no term in which the action shall be entered, it must intend that it should be entered at some term considered to be within a rea-

Pearl
v.
Allen.

sonable time, which is left to the sound discretion of the Court. In the exercise of such discretion we trust the Court will consider that *Allen* attempted to enter the action at the last term, in a mode which it is true was considered to be irregular, but which he has rectified the present term, according to the suggestion of the bench.

It will be observed, however, that the present is but an adjournment of the *February* term, in which it is contended the action ought to have been entered, and that the whole term, both in its outset and prolongation by adjournment, is considered in legal import to be but one day.

As to the third exception, we consider the passing of the act by the Legislature to have been no unconstitutional exercise of power. It is a power acknowledged by our opponents to have been exercised *ex necessitate rei* by the Legislature in certain cases before the passing of the act of *March* 2, 1797; and we consider that it may and must be exercised *ex necessitate rei* in all cases not comprehended in this act. The present case is certainly not included in the act; the second proviso to the second section

*Vermont* Stat.
vol. 1. p. 97.

of which provides, " that no new trial shall be granted in any cause, unless the petition and citation be preferred and served on the adverse party, if the reasons assigned be a matter of law, within one year next after the rendition of the original judgment; or if the reasons assigned be the discovery of new evidence, within two years next after the rendition of the original judgment; any thing herein contained to the contrary notwithstanding." The judgment which *Allen* seeks to reverse by a new trial, was entered more than two years before passing the act, being

rendered at *June* adjourned term of the Supreme Court, A. D. 1800, and the act passed *November* 9th, 1802.

We shall not particularly notice our opponent's alarming and picturesque statement of the destructive consequences which may be imagined to flow from the Court's sanctioning the act made in favour of our client, as we consider his observations better adapted to the political arena than for the sober precincts of a Court of Justice.

*Nathaniel Chipman.* Our first exception we are content should abide the decision of the Court on the third.

In reply to what has been advanced by Mr. *Chipman* on the second, we observe, that when a matter is left to the sound discretion of a Court, this discretion, to be *sound* in legal import, must be regulated by known and established principles or rules of practice. "When any thing is left to any person to be done according to his discretion, the law intends it must be done with sound discretion, and *according to law*." 1 *Lill. Abr.* 477. What is the rule in cases where a new trial is granted? When a new trial is granted by this Court on petition, which is the most analogous case which can be put, the entry or names of the parties in the cause to be reheard, is docketed immediately on the granting the prayer of the petition, and not at any future term of the Court.

It is said the present term, being an adjournment of the term in which we contend the action should have been entered, is but a prolongation of the stated term, and must be considered in legal import to be the same.

Pearl
v.
Allen.

It is true there is a saying, that the whole term is but one legal day, but this is said in the books to be a fiction, and can only apply in cases of adjournment from morning until the afternoon sittings, or from one day to the next, or to a third day, when a *dies non juridicus*, as a *Sunday* or red-lettered day, shall intervene, which adjournments are not noticed on the record; but cannot apply to an adjourned as parcel of the stated term. An adjourned term in this State is to almost all intents and purposes a distinct and new term; for new *venires* issue, and fresh term fees are taxed, and new original entries are made. Appeals from the County Courts cannot be entered, it is true, at an adjourned term, because they are expressly restricted to the stated term by the statute; but appeals from the Probate Courts may be entered, and reviews, which can never be taken to the same term, can be entered at the adjourned term. The records of the Court are not made up as of the same, but as of a distinct and separate term; and lastly, the act itself granting the new trial, contemplates the adjourned as a separate term; for if it were not so, it would not have described the judgment as rendered by the Supreme Court of Judicature at their " *June adjourned session;*" but the judgment would have been described in the preamble as rendered by the Supreme Court of Judicature, at their *stated February term*, holden by adjournment in *June*, &c.

As to the constitutionality of the act, we briefly observe, that there is in the nature of things a distinction between legislative and judicial acts; a distinction, if not precisely defined, well understood, especially as it relates to the present subject. To this distinction the constitution refers in the section read

in the opening. It remains for the Court to decide     Pearl
whether the legislative have by this act, in violation     v.
of the constitution, interfered with the judicial pow-     Allen.
er; which we shall submit, with the observations
made in the opening ; for it is not a matter of so high
importance, as connected with the cause *sub lite ;* as
we contend, that if the Legislature ever constitu-
tionally possessed the power to grant new trials in
the Courts of Law, they have devested themselves of
it by the statute of *March* 2, 1797.

It is objected, that as *Allen,* at the passing of the
act of *November,* 1802, was excluded from the be-
nefit of the act of *March,* 1797, by a limiting clause,
therefore the interference of the Legislature is pro-
per, as otherwise he would be without remedy.

But if the Legislature abandoned an assumed, or
delegated a legitimate power by the act of 1797, and
limited the benefit of the act to those who availed
themselves of it in time ; *non constat* that the Legis-
lature can constitutionally extend the benefits of it
to him who does not.

### Opinion of the Court.

The Court considered, that the intent of the act
was, that *Allen* should enter the action at the next
term after the session of the General Assembly
during which the act was passed.

That an adjourned term must be considered as a
separate and distinct term for the purpose of entry in
all cases where entries are proper at such term. The
Chief Judge observed, that he recollected a case,
although the names of the parties had escaped his
memory, which was decided during his practice at

Pearl
v.
Allen.

the bar, where the Court refused the entry of an appeal from a probate decree, which had been taken before the stated, and offered to be entered at the adjourned term.

The Court ordered the action to be struck from the docket.

At their *October* sessions, A. D. 1803, the General Assembly passed the following act:

An act granting a new trial to *Ebenezer Allen.*

Preamble. Whereas the Legislature of this State, at their session in *Burlington,* A. D. one thousand eight hundred and two, passed an act granting to *Ebenezer Allen* a new trial in an action tried between *Stephen Pearl,* plaintiff, and the said *Ebenezer,* defendant, before the Supreme Court of Judicature, holden by adjournment at *Burlington,* within and for the County of *Chittenden,* in the month of *June,* one thousand eight hundred, and it having been made to appear to this Legislature, that *Ebenezer Allen* hath lost the benefit of said act, in consequence of his not being able to obtain a copy of said act seasonably from the secretary's office, on account of the absence of the secretary at the time said *Allen* applied for the same; in consequence whereof said cause was not tried before said Supreme Court, but was dismissed from the docket of the Court. To the end, therefore, that said *Allen* may now be entitled to the benefit of said act,

It is hereby enacted by the General Assembly of the State of *Vermont,* that the clerk of said Supreme

Court, within and for said County, be, and he is hereby directed to enter said action anew on the docket of said Court, at their session in *January* next, and that a new trial be had in the same manner as though no judgment had ever been had and rendered thereon in said Supreme Court of Judicature. Provided, that the said *Ebenezer Allen* shall notify the said *Stephen Pearl* thereof by causing a true and attested copy of this act to be delivered to the said *Stephen* at least twelve days previous to the sitting of said Court.

The action was entered at that term, and no further exception taken to the legislative power in passing it.

The cause went to the Jury, who returned a verdict for *Pearl*. *Vide* the report of this cause in order of time.

*Daniel Chipman*, for *Allen.*
*Nathaniel Chipman* and *Samuel Hitchcock*, for *Pearl.*